IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CONTINENTAL WESTERN INSURANCE COMPANY, an Iowa corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ANDERSEN FARMS, INC., a Nebraska corporation; ANDERSEN FAMILY FARMS, a Nebraska general partnership; BRYCE ANDERSEN, an individual; LUANNE ANDERSEN, an individual; CITY OF SOUTH SIOUX CITY, NEBRASKA, a Nebraska municipal corporation; and THE FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA, a Nebraska corporation,<br><br>    Defendants. | CASE NO. _____<br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF** |

**COMES NOW** Plaintiff, Continental Western Insurance Company (CWIC), an Iowa corporation, by and through its attorneys, Engles, Ketcham, Olson & Keith, P.C., and for its Complaint against Defendants named above, states as follows:

**NATURE OF THE COMPLAINT**

1. In this action, CWIC seeks a declaratory judgment that it has no coverage for, and thus owes no duty to defend or indemnify, Defendants Andersen Farms, Inc. ("AFI"), Andersen Family Farms, Bryce Andersen and Luanne Andersen (collectively, the "Andersen Defendants"), with regard to the claims asserted against them by Defendant City of South Sioux City, Nebraska (the "City"), in an action currently pending in Dakota County District Court, State of Nebraska,

styled *City of South Sioux City, Nebraska v. Andersen Farms, Inc., et al.*, Case No. CI 18-201 (the "Underlying Action").

2. To the extent it is determined by this Court that the allegations contained in the Underlying Action trigger coverage under the subject insurance policy issued by CWIC to AFI, CWIC seeks in the alternative a declaratory judgment that The Farmers Mutual Insurance Company of Nebraska ("Farmers") has improperly denied coverage and is obligated to defend and indemnify the Andersen Defendants from and against the Underlying Action.

3. CWIC has named the Defendants as parties to this action because they are believed to possess actual or potential interests that may be implicated by the relief herein requested, to allow them an opportunity to participate in this action with respect to such interests to the extent they wish to do so, and to bind them to the adjudication of the matters herein raised.

4. CWIC does not, by bringing this action, request the assistance or participation of any of the Defendants in this action. To the extent that the Defendants wish to participate in this action, such participation concerns the assertion or protection of their own rights and claims, if any, which rights and claims are adverse to CWIC.

5. This Court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policies at issue in this lawsuit, as provided by 28 U.S.C. §2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

## JURISDICTION, VENUE AND PARTIES

6. At all pertinent times, Plaintiff CWIC was, and remains, an Iowa corporation in good standing with its principal place of business located at 11201 Douglas Ave., Urbandale, Iowa 50322.

7. Upon best present information and belief, Defendant AFI is a Nebraska corporation in good standing with its principal place of business located at 765 200th St., Dakota City, Nebraska 68731.

8. Upon best present information and belief, Defendant Andersen Family Farms is a Nebraska general partnership with Nebraska partners. The general partners for Andersen Family Farms are believed to be Defendants Bryce Andersen and Luanne Andersen.

9. Upon best present information and belief, Defendant Bryce Andersen is an individual whose address is 468 Highway 35, Dakota City, Nebraska 68731.

10. Upon best present information and belief, Defendant Luanne Andersen is an individual whose address is 468 Highway 35, Dakota City, Nebraska 68731.

11. Upon best present information and belief, Defendant Farmers is a Nebraska corporation in good standing with its principal place of business located at 501 South 13th Street, Lincoln, Nebraska 68508.

12. Upon best present information and belief, Defendant the City is a Nebraska municipal corporation in good standing with its principal place of business located at 1615 First Avenue, South Sioux City, Nebraska 68776.

13. This Court has jurisdiction over this action under 28 U.S.C. §1332(a)(1) and (c)(1). Plaintiff CWIC and each of the Defendants are citizens of different states, and the amount in controversy as to each of the Defendants exceeds the value of $75,000.00, exclusive of interest and costs of suit. Specifically, it is alleged in the Underlying Action that the Andersen Defendants are jointly and severally liable to the City in an amount not less than $120,034.82. Furthermore, the Andersen Defendants seek defense and indemnification from CWIC and Farmers, in whole or in part, with respect to these damages claimed by the City.

14. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because CWIC's and Farmers' alleged duties to defend and indemnify are situated in this Judicial District as the situs of those damages claimed by the City against the Andersen Defendants. The performance claimed to be due to or for the benefit of the Andersen Defendants from CWIC and/or Farmers occurred or would occur in this Judicial District in whole or in substantial part.

**FACTUAL BACKGROUND**

15. Per the allegations in the Underlying Action, an explosion ripped a gaping hole in the side of a grain elevator located at 2415 4th Avenue, South Sioux City, Nebraska (the "Property") on or about May 29, 2018. See **Exhibit A**, First Amended Complaint ("Amended Complaint"), ¶ 8.

16. The City's emergency personnel responded to the scene and performed evacuations, closed adjacent streets, and further monitored the Property around the clock until the

grain elevator was demolished on June 11, 2018. *Id.*, ¶ 9-10, 12. The parties' structural engineers apparently deemed the grain elevator "beyond repair or rehabilitation and further [determined] that the grain elevator posed an immediate danger to the life, health, safety, and property of others." *Id.*, ¶ 11.

17. By way of its Amended Complaint, the City seeks to recover the costs incurred in the performance of the emergency services, in an amount totaling $120,034.82, plus the statutory rate in prejudgment and/or post judgment interest. *Id.*, ¶ 27.

18. The City alleges that the Andersen Defendants, jointly and severally, are responsible for these costs under the 2012 International Property Maintenance Code (the "Maintenance Code"), adopted by reference pursuant to the Code of Ordinances of South Sioux City, Nebraska §§ 18-651, -652. *Id.*, ¶ 26, Prayer for Relief. The Emergency Measures section of the Maintenance Code provides, in relevant part, as follows:

> [W]henever, in the opinion of the *code official,* there is *imminent danger* due to an unsafe condition, the *code official* shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted; and shall cause such other action to be taken as the *code official* deems necessary to meet such an emergency.

*Id.*, ¶ 15; Maintenance Code § 109.2 (emphasis in original).

19. The Maintenance Code further states that "[c]osts incurred in the performance of emergency work shall be paid by the jurisdiction. The legal counsel of the jurisdiction shall institute appropriate action against the *owner* of the *premises* where the unsafe structure is or was located for the recovery of such costs." *Id.*, ¶ 16; Maintenance Code § 109.5 (emphasis in original).

20. According to the City, the Andersen Defendants are statutory "*owner[s]* of the *premises*" and are responsible to the City for the costs incurred in the performance of the above-identified emergency work. *Id.*, ¶¶ 13-23.

21. An "*owner*" is defined by the Maintenance Code as "[a]ny person, agent, *operator*, firm or corporation having a legal or equitable interest in the property […] or otherwise having control of the property […]," whereas an "*operator*" is defined as "[a]ny person who has charge, care or control of a structure […]." *Id.*, ¶¶ 17-18; Maintenance Code § 202 (emphasis in original).

4

22. Specifically, it is alleged by the City that:

    (a) The Property is owned by AFI and Bryce Andersen, *id.*, ¶¶ 6, 19-20;

    (b) Bryce Andersen is an executive officer of AFI, *id.*, ¶ 4;

    (c) Bryce and Luanne Andersen are general partners of Andersen Family Farms, *id.*, ¶ 23; and

    (d) The Andersen Defendants each had charge, care or control of the Property at time of the explosion, *id.*, ¶¶ 20-22.

23. CWIC's investigation into the loss has revealed that Andersen Family Farms leased the grain elevator from AFI and that Andersen Family Farms, not AFI, was performing operations at the Property at the time of the explosion.

24. CWIC is currently defending AFI and Bryce Andersen against the Underlying Action subject to a full reservation of rights to deny coverage. See **Exhibit B**, hereto.

25. For the reasons expressed in the attached correspondence, CWIC has determined that no coverage is due or owing to Andersen Family Farms and Luanne Andersen with respect to those allegations brought by the City.

26. CWIC further understands that some or all of the Andersen Defendants are insureds under a farm/ranch policy issued by Farmers.

27. Nevertheless, Farmers has declined to defend the Andersen Defendants from and against the Underlying Lawsuit on the basis that "there is nothing in the damages being sought by the City that would meet the definition of 'property damage' in our policy."

## THE POLICIES

28. CWIC issued policy no. ABP 2386674-35 to AFI for the October 19, 2017 to October 19, 2018 policy period (the "CWIC Policy"). In relevant part, the CWIC Policy provides Commercial General Liability ("CGL") coverage with per occurrence, general aggregate and products-completed operations aggregate limits of $1MM, subject to a $1,500 per occurrence property damage deductible. A true and correct copy of the CWIC Policy is attached as **Exhibit C** hereto.

29. CWIC is not in possession of the insurance policy issued by Farmers to the Andersen Defendants (the "Farmers Policy"), due to Farmers' refusal to provide the same. CWIC

has, however, been provided an exemplar, attached as **Exhibit D**, which Farmers represents to be a true and correct copy of the Farm and Ranch 3 Special Form (03/14) contained in the Farmers Policy.

30. CWIC has been placed on notice of the Underlying Action by one or more of the Defendants. There is an actual controversy existing between CWIC, Farmers and the Andersen Defendants regarding CWIC's and Farmers' obligations under the CWIC Policy and the Farmers Policy, respectively, in connection with the Underlying Action.

31. Pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57, Federal Rules of Civil Procedure, CWIC seeks a judicial declaration of its rights and duties under the CWIC Policy, in addition to a judicial declaration of Farmers' rights and duties under the Farmers Policy. The Court's declaration will confer certainty on the parties and serve the interests of justice, given that CWIC and Farmers maintain disparate coverage positions relative to the City's allegations under similar policies of insurance issued to some or all of the Andersen Defendants.

32. This dispute is ripe for judicial determination. Any preconditions to the assertion of this action by CWIC have been met.

33. CWIC asserts herein only its presently known claims and therefore respectfully reserves the right to amend its Complaint for Declaratory Judgment and Other Relief to add, delete, or modify its claims as may be warranted in the future as more information is disclosed or obtained through discovery or otherwise.

34. CWIC does not waive any terms, conditions, provisions or exclusions contained in the CWIC Policy that may apply to preclude coverage for those losses alleged in the Amended Complaint filed in the Underlying Action.

### COUNT I – DECLARATORY JUDGMENT – ANDERSEN FAMILY FARMS AND LUANNE ANDERSEN ARE NOT INSUREDS UNDER THE CWIC POLICY WITH RESPECT TO THOSE ALLEGATIONS CONTAINED IN THE UNDERLYING ACTION

35. CWIC incorporates by reference all allegations set forth in the previous paragraphs.

36. The Commercial General Liability coverage part contained in the CWIC Policy includes Coverage A – Bodily Injury and Property Damage Liability coverage. Coverage A defines an "insured" as follows:

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" […], or your "employees", […] or your managers […].

   b. Any person […] or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die […].

   d. Your legal representative if you die […].

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. […]

\*   \*   \*

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

7

*    *    *

See Ex. C, pp. 129-30.

37. The named insured under the CWIC Policy is Andersen Farms, Inc. *Id.*, p. 117. Under Section II – Who is an Insured, AFI's "executive officers" and directors are insureds, but only with respect to their duties as officers or directors, AFI's stockholders are insureds, but only with respect to their liability as stockholders, and AFI's "volunteer workers," "employees," and managers are insureds, but only for acts within their scope of employment with AFI.

38. Among those parties named in the City's Amended Complaint include AFI, Andersen Family Farms, Bryce Andersen and Luanne Andersen.

39. CWIC does not dispute that AFI and Bryce Andersen qualify as insureds under the CWIC Policy.

40. Nevertheless, CWIC understands that Andersen Family Farms is a general partnership. This entity is not named as a named insured or as an additional insured under the CWIC Policy. Moreover, this entity does not qualify as an insured under the definitions set forth under Section II – Who is an Insured.

41. Coverage, therefore, is unavailable to Andersen Family Farms under the CWIC Policy for those claims brought by the City in the Underlying Action.

42. Furthermore, CWIC understands that Luanne Andersen is a general partner of Andersen Family Farms and is alleged by the City to be liable for the debts and obligations of this entity. See Ex. A ¶¶ 5, 23.

43. The CWIC Policy states, in relevant part, that "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." See Ex. C, p. 130.

44. Luanne Andersen is not an officer or director of AFI nor is she an employee of the named insured. There is no potential basis upon which to conclude that she might qualify as an insured and, therefore, be entitled to a defense under the CWIC Policy.

45. Accordingly, CWIC seeks a declaration pursuant to F.R.C.P. 57 that it has no duty to defend or indemnify Andersen Family Farms and Luanne Andersen with respect to the Underlying Action because they are not insureds under the CWIC Policy.

## COUNT II – DECLARATORY JUDGMENT – THE ANDERSEN DEFENDANTS ARE INSUREDS UNDER THE FARMERS POLICY WITH RESPECT TO THOSE ALLEGATIONS CONTAINED IN THE UNDERLYING ACTION

46. With respect to the coverages afforded by the Farmers Policy, an "insured person" is defined as follows:

> **DEFINITIONS USED THROUGHOUT THIS POLICY**
> The terms below appear in bold type throughout this policy.
> \* \* \*
> "**Insured Person**" means:
>
> (a) **you**;
> (b) **your** relatives residing in **your** household; or
> (c) any other person under the age of majority residing in **your** household who is in **your** care or the care of **your** relative residing in your household.
>
> Under Section VI – Farm and Personal Liability Protection, "**insured person**" also means:
>
> (d) a person or organization legally responsible for animals or watercraft covered by this policy and owned by a person described in (a), (b), or (c). **We** will cover that person or organization only with respect to those animals or watercraft. **We** will not cover a person or organization:
>
> > (1) using or having custody of animals or watercraft in the course of **business** or without permission of the owners;
> > (2) who is acting in the capacity of agister or depasturer; or,
> > (3) who, for a fee, feeds or pastures livestock owned by a person described in (a), (b), or (c).
>
> (e) with respect to farm tractors and trailers and self-propelled or motor or animal drawn farm implements, a **farm employee** of a person described in (a), (b), or (c), while engaged in the employment of that person.
>
> \* \* \*
>
> "**You**" and "**your**" mean the Policyholder named in the Declarations and spouse if living in the same household.
>
> \* \* \*

9

See Ex. D, p. 3.

47. Upon best present information and belief, AFI and Andersen Family Farms are identified as named insureds to the Farmers Policy. These entities, therefore, are "insured persons," as that term is defined above, for those allegations contained in the City's Amended Complaint.

48. It is unknown to CWIC whether Bryce Andersen and/or Luanne Andersen are named insureds or additional insureds to the Farmers Policy.

49. In any event, CWIC understands that Andersen Family Farms is a general partnership. Under Nebraska law, a general partnership does not provide any liability protection for its partners. Rather, each partner is jointly and severally liable to the extent of his or her personal assets for any liabilities of the partnership which cannot be satisfied by the assets of the partnership.

50. CWIC understands that both Bryce and Luanne Andersen are general partners of Andersen Family Farms. See Ex. A ¶ 23. To the extent that Andersen Family Farms is responsible for the City's claimed damages, this liability is passed through to Bryce and Luanne Andersen.

51. As such, any position taken by Farmers that Bryce or Luanne Andersen do not qualify as "insured persons" would render the coverage under the Farmers Policy illusory, unconscionable and against public policy.

52. Accordingly, CWIC seeks a declaration pursuant to F.R.C.P. 57 that AFI, Andersen Family Farms, Bryce Andersen and Luanne Andersen qualify as "insured persons" under the Farmers Policy with respect to those allegations contained in the Underlying Action.

**COUNT III – DECLARATORY JUDGMENT – THE INSURING AGREEMENT TO COVERAGE "A" CONTAINED IN THE CWIC POLICY HAS NOT BEEN TRIGGERED BY WAY OF THE ALLEGATIONS IN THE CITY'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FARMERS HAS BREACHED ITS DUTY TO DEFEND AND INDEMNIFY THE ANDERSEN DEFENDANTS FROM AND AGAINST THE UNDERLYING ACTION**

53. CWIC incorporates by reference all allegations set forth in the previous paragraphs.

54. The insuring agreement contained in Coverage A to the CWIC Policy, as amended by the Limitation of Coverage to Designated Premises, Project or Operation Endorsement, Form CG 21 44 (04/17), provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. […]

   \*   \*   \*

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
   **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. […]

   \*   \*   \*

See Ex. C, pp. 121, 142.

55. As used in the CWIC Policy, and modified by the Bodily Injury Redefined Endorsement, Form CL CG 24 01 (09/16), the above terms are defined as follows:

**SECTION V - DEFINITIONS**

**3.** "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\*   \*   \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*   \*   \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*   \*   \*

*Id.*, pp. 133, 135-36, 158.

56. The CWIC Policy is responsive to "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The CGL coverage part applies to "bodily injury" or "property damage" caused by an "occurrence," provided that such "bodily injury" or "property damage" takes place during the policy period and the claimed injury or damage "[o]ccurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or [a]rises out of the project or operation shown in the Schedule."

12

57. The Amended Complaint alleges that an explosion severely damaged the insureds' grain elevator, causing an "imminent danger" to persons and property and requiring the assistance of the City's emergency personnel. See Ex. A, ¶¶ 8-11, 15.

58. The City's claimed damages, enumerated above, include the costs incurred in the performance of the emergency services at the Property, in an amount totaling $120,034.82, for which the Andersen Defendants are alleged to be jointly and severally liable. *Id.*, ¶ 27, Prayer for Relief.

59. Ultimately, the Underlying Action does not present a claim for "damages because of 'bodily injury' or 'property damage' to which this insurance applies."

60. In material part, the City seeks to recover costs incurred for the emergency services provided rather than for any damage to property owned by the City or others. These damages constitute intangible, economic losses for which there is no coverage under the CGL policy issued by CWIC.

61. Therefore, the insuring agreement contained in Coverage A to the CWIC Policy has not been triggered in the first instance, as there are no allegations of "bodily injury" or "property damage" arising out of the insureds' operations for which the City seeks to recover in the Underlying Action.

62. Accordingly, CWIC seeks a declaration pursuant to F.R.C.P. 57 that it has no duty to defend or indemnify its insureds, AFI and Bryce Andersen, with respect to the Underlying Action because the insuring agreement to Coverage A has not been triggered.

63. In the alternative, CWIC seeks a declaration pursuant to F.R.C.P. 57 that Farmers has improperly denied coverage and owes a duty to defend and indemnify the Andersen Defendants from and against the Underlying Action.

64. The Farmers Policy provides casualty coverage pursuant to Section VI – Farm and Personal Liability Protection. The insuring agreement contained in Coverage L – Farm and Personal Liability states, in relevant part, as follows:

**COVERAGE L – FARM AND PERSONAL LIABILITY**

We will pay all sums arising out of an **occurrence** which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this policy. "Damages" includes prejudgment interest awarded

against the **insured person** and does not increase the limit of liability shown on the **Declarations**. If a claim is made or suit is brought against an **insured person** for liability under this coverage, **we** will defend the **insured person** at our expense, using lawyers of our choice. **We** are not obligated to defend after **we** have paid an amount equal to the limit of **our** liability. **We** may investigate or settle any claim or suit as **we** think appropriate.

\* \* \*

See Ex. D, p. 17.

65. Similar to the CWIC Policy, Farmers agreed to "pay all sums arising out of an **occurrence** which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this policy." The emphasized terms in the Farmers Policy are defined in a substantially similar manner as their counterparts in the CWIC Policy. *Id.*, p. 3.

66. Cognizant of its obligations to its insureds and to protect its real and direct interests in the Underlying Action, CWIC agreed to participate in the defense of AFI and Bryce Andersen, subject to a full reservation of rights, from the date of tender through the present.

67. Farmers, on the other hand, denied coverage to the Andersen Defendants outright and opined that "there is nothing in the damages being sought by the City that would meet the definition of 'property damage' in our policy."

68. Should this Court determine that the insuring agreement to Coverage A contained in the CWIC Policy is triggered by way of the City's allegations, the comparable insuring agreement to Coverage L contained in the Farmers Policy is necessarily triggered as well.

69. In such a circumstance, Farmers is in breach of its duty to defend and indemnify the Andersen Defendants from and against the Underlying Action, to the detriment of not only the Andersen Defendants but to CWIC as well.

**WHEREFORE**, CWIC respectfully prays for a speedy hearing in accordance with Fed. R. Civ. P. Rule 57 and a declaratory judgment pursuant to the authority set forth in Rule 57 and 28 U.S.C. sections 2201 and 2202 adjudging and determining the rights and obligations of the parties under the CWIC Policy and the Farmers Policy including, but not limited to, the following: (a) that Andersen Family Farms and Luanne Andersen are not insureds under the CWIC Policy; (b) that the CWIC Policy does not afford coverage to the Andersen Defendants in connection with

the Underlying Action; (c) that CWIC has no duty to defend the Andersen Defendants in connection with the Underlying Action; (d) that CWIC has no duty to indemnify the Andersen Defendants in connection with the Underlying Action; (e) that AFI, Andersen Family Farms, Bryce Andersen and Luanne Andersen are insureds under the Farmers Policy; (f) that the Farmers Policy affords coverage to the Andersen Defendants in connection with the Underlying Action; (g) that Farmers breached its duty to defend and indemnify the Andersen Defendants from and against the Underlying Action; (h) awarding CWIC reimbursement of attorneys' fees, costs and disbursements paid on behalf of AFI and Bryce Andersen in the defense of the Underlying Action to the extent it is determined that no coverage is owed under the CWIC Policy; and (i) for all such other and further relief as equity and the justice of the cause may require and permit, including as appropriate, awards of interest, costs, and reasonable attorney's fees.

Dated this 29th day of January, 2019.

CONTINENTAL WESTERN INSURANCE COMPANY,
an Iowa corporation, Plaintiff,


By: s/ Robert S. Keith
ENGLES, KETCHAM, OLSON & KEITH, P.C.
1350 Woodmen Tower
Omaha, Nebraska 68102
(402) 348-0900  Fax (402) 348-0904
Robert S. Keith, #21023
rkeith@ekoklaw.com
Alexis M. Wright, #25844
awright@ekoklaw.com


Co-counsel:

John R. Chase
Montgomery, Amatuzio, Chase, Bell & Jones, LLP
4100 East Mississippi Avenue, Suite 1600
Denver, Colorado 80246
(303) 592-6600  Fax (303) 592-6666
jchase@mac-legal.com